**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA**

| | |
|---|---|
| State of Minnesota, by and through its Minnesota Pollution Control Agency,<br><br>      Plaintiff,<br><br>    v.<br><br>3M Company and 3M Chemical Operations, LLC,<br><br>      Defendants. | CASE NO. 0:26-cv-02440-LMP-DLM |

**MEMORANDUM IN SUPPORT OF DEFENDANT 3M COMPANY'S MOTION
TO STAY PENDING RULING ON TRANSFER TO THE *IN RE AFFF* MDL**

Defendant 3M Company ( "3M") respectfully submits this memorandum in support of its Motion to Stay Pending Ruling on Transfer to the *In re AFFF* MDL.

Plaintiff State of Minnesota, by and through its Minnesota Pollution Control Agency ("Plaintiff"), seeks to hold 3M liable for alleged discharges of per- or polyfluoroalkyl substances ("PFAS") from a manufacturing facility 3M operates in Cottage Grove, Minnesota.[1] One of the PFAS-containing products that 3M manufactured at the Cottage Grove facility is aqueous film-forming foams ("AFFF"), produced in accordance with rigorous military specifications. 3M's historic manufacture of AFFF is the source of at least some of the discharges of which the State complains. In that sense, this action is on all fours with multiple other cases that the Judicial Panel on Multidistrict Litigation has recently transferred to the *In re AFFF* MDL on the basis that the plaintiffs' claims involved

---

[1] In December 2022, 3M announced it would exit PFAS manufacturing at all of its facilities, including Cottage Grove, by the end of 2025, and it has completed that exit.

1

PFAS discharges from facilities where 3M manufactured AFFF. *See*, *e.g.*, Transfer Order at 1-2, ECF No. 2679 (J.P.M.L. June 7, 2024) (transferring actions involving a 3M facility in Decatur, Alabama after 3M "proffered evidence showing that AFFF compliant with the U.S. Military Specification for AFFF was manufactured at the Decatur plant"). For that reason, 3M has tagged this case for potential inclusion in the MDL, and a final decision from the JPML on 3M's transfer request is expected no later than August 2026.

3M respectfully requests a brief stay of this action pending the JPML's decision on transfer. Given the high likelihood that this case will be transferred to the MDL, the short length of the requested stay, and the fact that this case is at its very inception, a stay is appropriate to promote efficiency and preserve judicial and party resources. *See, e.g., AIG Prop. Cas. Co. v. 3M Co.,* No. 24-4032 (PAM/DJF), 2024 WL 5285004, at *2 (D. Minn. Dec. 18, 2024) (concluding that a stay pending the JPML's decision whether to transfer a PFAS-related case "provides the opportunity for the uniformity, consistency, and predictability in litigation").

## BACKGROUND

Plaintiff commenced this action on April 3, 2026, using the Minnesota practice colloquially referred to as "hip-pocket service." *See MCHS Red Wing v. Converse*, 961 N.W.2d 780, 784-85 (Minn. Ct. App. 2021). The complaint alleges that PFAS from 3M's Cottage Grove Facility discharged into ground and surface waters, resulting in violations of "permit conditions, regulatory rules, and federal and state statutes." *Id*. at 1-2. The complaint identifies several alleged sources of these discharges, including stormwater runoff from the Cottage Grove Facility generally (*see, e.g., id.* ¶ 64); the facility's fire

training area (*see, id.* ¶ 81, 101, 123-24); its Solid Waste Management Unit 15 – Disposal Area D8 (*see id.* ¶ 90); its "East Cove" disposal area (*see*, ¶ 91); and its wastewater treatment plant area (*see id.*).

One of the PFAS-containing products that 3M produced at the Cottage Grove Facility was AFFF that it manufactured and tested in accordance with rigorous military specifications ("MilSpec") issued by the Department of Defense. As evidenced in a series of letters the U.S. Navy sent to 3M from 1971 to 1991, the military specifically approved of 3M's production of MilSpec AFFF at the Cottage Grove Facility. *See* NOR ¶ 25 & Ex. C. In addition, 3M conducted qualification and conformance testing on MilSpec AFFF products at the Cottage Grove pursuant to Milpec requirements. *See id.* ¶ 26 & Ex. D. Because the alleged discharges that form the basis of Plaintiff's complaint relate at least in part to 3M's manufacture and testing of MilSpec AFFF, 3M timely removed this action to federal court on the basis of federal officer jurisdiction, *see* 28 U.S.C. § 1442(a)(1), noting its intention to assert the government contractor defense as to AFFF-related claims. *See generally* Notice of Removal, ECF No. 1.

On the same day, 3M filed a Notice of Potential Tag-Along Action with the JPML, identifying this case for potential inclusion in the AFFF MDL pursuant to Panel Rule 7.1. *See* Exhibit A. The Panel is likely to consider 3M's transfer request at its July 2026 hearing session, and to issue a final decision on transfer within one to two weeks of that session.

The JPML has repeatedly transferred cases involving alleged PFAS discharges from facilities where 3M produced AFFF, finding that such cases inevitably "share numerous factual questions with the actions pending the MDL," making transfer appropriate. *See*

3

Transfer Order at 1, ECF No. 2679 (J.P.M.L. June 7, 2024) (transferring actions involving 3M's Decatur facility after 3M "proffered evidence showing that AFFF compliant with the U.S. Military Specification for AFFF was manufactured at the Decatur plant," which was "sufficient" to warrant transfer); Transfer Order at 1, ECF No. 2797 (J.P.M.L. Aug. 1, 2024) (transferring additional actions alleging exposure to PFAS contamination from 3M's Decatur facility); Transfer Order, ECF No. 3166 (J.P.M.L. Dec. 12, 2024) (same); *see also* Transfer Order at 1–2, EF No. 960 (J.P.M.L. Apr. 1, 2021) (transferring action because the defendant manufactured AFFF at one of the two facilities identified in the complaint).[2]

## ARGUMENT

A court's power to stay proceedings is "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).

When a party has requested transfer of an action to a pending multidistrict litigation, courts "frequently grant stays pending the JPML's determination whether to consolidate and transfer cases." *Anderson v. Fortra LLC,* No. 23-CV-533 (SRN/DTS), 2024 WL 195648, at *2 (D. Minn. Jan. 18, 2024) (quoting *Ephraim v. Abbott Lab'ys, Inc.,* 601 F. Supp. 3d 1274, 1275 (S.D. Fla. 2022)); *see also, e.g., Lessard v. Volkswagen Grp. of Am., Inc.,* No. 16-cv-0754 (WMW/TNL), 2016 WL 3004631, at *1 (D. Minn. May 24, 2016) (quoting *Rivers v. Walt Disney Co.*, 980 F. Supp. 1358, 1362 (C.D. Cal. 1997)) ("To conserve judicial resources, 'it is often appropriate to stay preliminary pretrial proceedings

---

[2] All ECF citations to the JPML reference the public docket for *In re Aqueous Film-Forming Foams Products Liability Litigation*, MDL No. 2873.

while a motion to transfer and consolidate is pending with the [JPML].'"). Granting a stay pending a request to transfer an action to an MDL "eliminates the possibility of inconsistent rulings and duplicative litigation." *Ephraim v. Abbott Lab'ys, Inc.*, 601 F. Supp. 3d 1274, 1276 (S.D. Fla. 2022).

Courts consider three factors when deciding whether to stay an action pending the JPML's consideration of a transfer request: (1) the potential prejudice to the non-moving party; (2) the hardship and inequity to the moving party if the action is not stayed; and (3) the judicial resources that would be saved by avoiding duplicative litigation if the case is transferred. *See Anderson*, 2024 WL 195648 at *2. Particularly given the likelihood that this case will be transferred (like the other cases before it involving facilities where AFFF was manufactured), all three factors favor a stay here. *See AIG Prop. Cas. Co.,* 2024 WL 5285004 at *2.

## I.    Plaintiff Will Not Be Prejudiced by a Stay.

Plaintiff will suffer no prejudice from a short stay. This action is "in its infancy"—the case has just been removed to this Court, no responsive pleadings or motions have been filed,[3] and no discovery has commenced—which "minimizes any potential prejudice to the Plaintiff from a stay." *Ali v. 7-Eleven, Inc.*, No. 22-20328-CIV, 2022 WL 713665, at *2 (S.D. Fla. Mar. 10, 2022); *see also Struthers v. Ocwen Loan Servicing, LLC*, No. 4:13–CV–00189–SMR–CFB, 2013 WL 12308089, at *2 (S.D. Iowa Nov. 12, 2013) (granting

---

[3] Prior to 3M's removal of this action, Plaintiff "pocket served" this action and agreed to accept a waiver of service that, under state law, provided Defendants until June 2, 2026 to file a responsive pleading.

stay pending transfer and noting that the proceedings had "not progressed so far as to make a stay prejudicial"); *Davison v. Ameriquest Mortg. Co.*, No. 08-00170-CV-W-ODS, 2008 WL 11337248, at *1 (W.D. Mo. May 6, 2008) (no prejudice from stay where "case [was] at an early stage"); *Lessard v. Volkswagen Grp. of Am., Inc*., No. 16-CV-0754 (WMW/TNL), 2016 WL 3004631, at *2 (D. Minn. May 24, 2016) (finding that the other factors outweigh the "minimal prejudice" that a stay would impose two months after case was filed). A stay will not deprive Plaintiff of any substantive right; given that the JPML will consider 3M's transfer request at its July 2026 hearing session (and resolve it within 1-2 weeks thereafter), a stay would only briefly pause proceedings for approximately three months.

Courts routinely find that equivalently brief stays do not prejudice the plaintiff. *See AIG Prop. Cas. Co.*, 2024 WL 5285004, at *1 (finding that stay of "a few … months" would not prejudice the plaintiff); *Maryland v. 3M Co.*, No. CV RDB-23-1836, 2026 WL 1084894, at *4 (D. Md. Apr. 22, 2026) ("[T]here is no significantly prejudicial delay resulting from a stay pending the JPML's decision of 3M's transfer motion, which is expected to issue within the next three months."); *Kellogg v. Watts Guerra, LLP*, No. CV 18-1082 (DWF/BRT), 2018 WL 3432048, at *2 (D. Minn. July 16, 2018) (staying case where there was "no reason to think that the JPML [would] not resolve the issue in a timely manner."); *Witherspoon v. Bayer Healthcare Pharms. Inc*., No. 4:13CV01912 ERW, 2013 WL 6069011, at *2 (E.D. Mo. Nov. 18, 2013) ("[A] stay would result in minimal prejudice to Plaintiffs, because the JPML will likely determine the transferability of this case in a

6

short time."); *Emerson v. Lincoln Elec. Holdings, Inc.*, No. 09-6004-CV-SJ-GAF, 2009 WL 690181, at *1 (W.D. Mo. Mar. 12, 2009) (same).

The likelihood of transfer here further underscores the lack of prejudice to Plaintiff from a short stay. The JPML has routinely and recently transferred cases involving PFAS contamination from facilities where AFFF was manufactured, which on its own is "sufficient" to warrant transfer. Transfer Order at 2, ECF No. 3166 (J.P.M.L. Dec. 12, 2024); Transfer Order at 1, ECF No. 2797 (J.P.M.L. Aug. 1, 2024); Transfer Order at 1-2, ECF No. 2679 (J.P.M.L. Jun. 7, 2024); Transfer Order at 2, ECF No. 960. That is the case here. *See* Compl. ¶¶ 16-17, 48, 91-92; Ex. A at 1-2. As other courts have recognized, "it is reasonable to assume that [a] case will eventually be transferred to MDL proceedings" if the JPML has "routinely consolidated similar cases arising out of" similar facts. *Gray v. Target Corp.*, No. 13-62769-CIV, 2014 WL 12600138, at *1 (S.D. Fla. Jan. 27, 2014) (granting stay). Given the likelihood of transfer, Plaintiff "will suffer little, if any, prejudice from such a short stay." *Fowler v. Hamilton Med. Ctr., Inc.*, No. 4:08-CV-0055-HLM, 2008 WL 11336192, at *2 (N.D. Ga. May 7, 2008); *see Poarch Band of Creek Indians v. Amneal Pharms., LLC*, No. CV 20-0279-WS-B, 2020 WL 3833009, at *3 (S.D. Ala. July 8, 2020) (explaining that stays are especially appropriate "when the transferor court believes that a transfer order is likely" (quoting *Stanton*, 2017 WL 3701143, *1)).

## II.   3M Will Suffer Hardship and Inequity Absent a Stay.

By contrast, 3M will suffer concrete prejudice absent a stay. "[A]llowing pretrial proceedings to continue poses a significant risk of duplicative motions and discovery that could result in needless expense and inequity to" 3M while the parties await the JPML's

final determination on transfer. *See Azar v. Merck & Co*., 2006 WL 3086943, at *1 (N.D. Ind. Oct. 27, 2006); *accord Clarke v. 3M Co*., No. 3:25-cv-738, Dkt. 14 at 3 (E.D. Va. Oct. 30, 2025) ("Defendant would be required to expend resources by filing a responsive pleading or engaging in discovery—litigation that will prove duplicative if this case is later transferred to the MDL."); *Gallagher v. Boehringer Ingelheim Pharms., Inc*., No. 22-CV-10216, 2023 WL 402191, at *9 (S.D.N.Y. Jan. 25, 2023); *Simmons v. GlaxoSmithKline, LLC,* No. 4:15CV1397 CDP, 2015 WL 6063926, at *1 (E.D. Mo. Oct. 14, 2015) (same); ("Absent a stay, these entities likely will be forced to engage in duplicative efforts in a number of fora.").

Here, as explained above, the JPML will likely issue a ruling on whether to transfer this case to the AFFF MDL by no later than August of this year. Burdening the parties with initial disclosures and motion practice, discovery, or pretrial obligations during the brief period prior to transfer imposes costs and risks that are greater that any "minimal prejudice" to the Plaintiff that a short stay would impose this early in the litigation. *Lessard,* 2016 WL 3004631, at *2; *Witherspoon*, 2013 WL 6069011 at *2; *see also Tibbetts v. 3M Co.*, No. 21-2400, 2022 WL 252685, at *1 (E.D. La. Jan. 27, 2022) (granting stay of AFFF case, including any motion to remand, pending MDL transfer to "avoid prejudice to the defendants" of having to re-litigate issues before the MDL); *Maryland*, 2026 WL 1084894, at *4 (D. Md. Apr. 22, 2026) (same to avoid risk of "inconsistent rulings on remand issues common to both this matter and the matters pending in the *AFFF* MDL").

### III.    A Stay Will Conserve Judicial Resources and Promote Efficiency.

For similar reasons, a stay would promote judicial economy by avoiding duplicative proceedings. In creating the AFFF MDL, the JPML recognized that centralization was necessary to "eliminate[s] duplicative discovery; prevent[s] inconsistent pretrial rulings (including with respect to discovery, privilege, and *Daubert* motion practice); and conserve[s] the resources of the parties, their counsel, and the judiciary." *In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, 357 F. Supp. 3d 1391, 1394 (J.P.M.L. 2018). Today, there are over 15,000 actions pending in the MDL before Judge Gergel in the District of South Carolina, including multiple actions alleging PFAS discharges from 3M facilities that manufactured AFFF. *See supra*.

The risk of duplicative proceedings is not speculative. Two recently transferred cases involving 3M's other facility that manufactured AFFF (in Decatur, Alabama), demonstrate how litigating a case prior to a ruling on transfer wastes both party and judicial resources. *See* Transfer Order, ECF No. 3166 (J.P.M.L. Dec. 12, 2024) (transferring *Colbert County* and *Muscle Shoals* actions). In those two cases, prior to transfer, the Alabama district court dedicated considerable time to those cases, ordering an expedited hearing schedule, hearing oral argument, and receiving supplemental briefing on the plaintiffs' remand motions. All that proved futile upon transfer to the AFFF MDL. The MDL court then had to consider new briefing on identical issues, but this time under Fourth Circuit law. *See Colbert County v. 3M Company, et al.*, No. 2:24-cv-07480 (D.S.C.), Dkt. No. 51 (denying motions to remand without prejudice and ordering re-briefing in light of

9

*Maryland v. 3M Co.*, 130 F.4th 380 (4th Cir. 2025)).[4] A brief stay will ensure that this Court does not needlessly expend judicial resources on a case that is likely to soon be proceeding before a different court. *See Verschoor v. Volkswagen Grp. of Am., Inc.,* No. 16-CV-01256-MJD-KMM, 2016 WL 3960372, at *3 (D. Minn. June 17, 2016), *report and recommendation adopted,* No. 16-CV-1256-MJD-KMM, 2016 WL 3962863 (D. Minn. July 20, 2016*)* ("This Court should not expend its energy evaluating a complex issue it will likely never decide; a relatively short stay of the proceedings while the JPML decides whether to transfer the matter is the best way to prevent such potential waste under these circumstances.").

## CONCLUSION

For the foregoing reasons, 3M respectfully requests that this Court stay all proceedings in this action pending the JPML's ruling on 3M's motion to transfer this action to the AFFF MDL.

---

[4] In the end, the MDL Court denied plaintiffs' motion to remand, holding that "3M's alleged *disposal* of PFAS-contaminated waste from the Decatur facility necessarily flows from, or is intrinsic to, its *production* of MilSpec AFFF at the Decatur facility. 3M has satisfied all elements for federal officer removal." *See id.*, Dkt. No. 66 at 8.

Dated: May 4, 2026                            Respectfully submitted,

**FAEGRE DRINKER BIDDLE & REATH LLP**

*/s/ Christopher H. Dolan*
Christopher H. Dolan (#0386484)
Frances M. Daniels (#0403829)
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
Phone: 612.766.7000
chris.dolan@faegredrinker.com
fran.daniels@faegredrinker.com

***Attorneys for Defendant 3M Company***

11